## Case No. 12,297a.

### SANDERSON et al. v. The ANN JOHNSON.

[3 Adm. Rec. 159; 4 Adm. Rec. 527.]

Superior Court, S. D. Florida. May 20, 1843.

SALVAGE—UNNECESSARY LABOR—COMPENSATION—
HOW DETERMINED— ESTOPPEL.

[1. Salvors should not have their compensation for services actually necessary reduced because they performed additional unnecessary labor.]

[2. The total amount of salvage compensation is determined by the value of the services to the property saved; not by the number of salvors.]
[See, contra, The D. M. Hall v. The John ·Land, Case No. 3,939.]

[3. The employment of an unnecessary number of salvors, by the person to whom the salvage service is entrusted, is not censurable, but should not increase the total award.]

[4. The master of a vessel in a dangerous situation, after summoning wreckers to his assistance, will not be heard to object to the payment of salvage on the ground that such assistance was unnecessary.]

[This was a libel for salvage by Samuel Sanderson and others against the British brig Ann Johnson and cargo.]

Wm. R. Hackley, for libellants.
S. R. Mallory, for respondent.

MARVIN, J. The material facts in this case, as set forth in the libel, are verified by the proof. It appears that the brig ran ashore at nearly high water on the night of the 16th, and on the next morning, when boarded by Sanderson and his associates, she was very much careened over and lay in much less water than she drew. Sanderson was employed to render his assistance in getting the brig off, and he lightened her by discharging a part of her cargo, carried out her bower anchor, and at high water, about twelve o'clock that day, hove the brig off, and brought her to this port. The principal points relied upon by the master of the brig to diminish the amount of compensation to Sanderson and his associates for the services rendered are: First. That Sanderson discharged cargo unnecessarily, and against his advice and judgment, and thereby increased the expenses of the brig and cargo. Second. That he, the master of the brig, employed Sanderson and his crew only to render him the necessary services, and the other vessels and crews were of no use. Third. That the brig was not in a dangerous situation, and he would have gotten her off at the same high water without assistance.

As to the first point, that Sanderson discharged cargo unnecessarily: It appears in proof that the brig ran ashore near high water, and that the bottom, though smooth, was hard and rocky, and when boarded by Sanderson the brig was very much careened; that the master desired and advised Sanderson to carry out the bower anchor before he commenced lightening the brig, but Sanderson hauled his vessel alongside the brig at once, and then employed a part of the force at command in lightening the brig and a part in carrying out and planting the anchor; that the business of carrying out the anchor and lightening the brig was going on at the same time, and as the tide rose to its height, the anchor being planted, and the brig lightened, she was easily hove off. Now, it appears to me difficult to conceive of a more judicious mode, under the circumstances, to relieve this brig, uninjured, and in the shortest possible time, than that adopted by Sanderson. It was important and highly desirable that the brig should be gotten off as soon as possible, to save her from being injured by chafing, thumping, or being strained upon the rocks. Sanderson had force enough at command to carry out the anchor and lighten the brig at the same time. The appearances at the time evidently indicated that it would be necessary to lighten the brig. Now, suppose that the whole morning had been consumed in carrying out the anchor, and the brig had retained her whole cargo on board, and it had been found by experience, when it became high water, that she must be lightened before she could be gotten off, the opportunity afforded by that high water would have been lost, and she must have remained on the reef until the next high water, or a much larger portion of her cargo must have been removed. It is conceded, that it was proved afterwards by the ease with which the brig was hove off, that the removal of the cargo was unnecessary. But at the time the cargo was removed the circumstances strongly indicated the necessity; and the actors are not to suffer a diminution of their just compensation for their services which were actually necessary, as proved by the event, because they performed other labor not necessary.

As to the second point, that the master employed Sanderson and his crew only, and the other vessels and crews were unnecessary: The compensation to be given to Sanderson and his associates is to be measured by the value of the services to the brig and cargo, and not by the number of men employed in rendering the services. It appears to me that Sanderson and his crew alone could have rendered all the service necessary to this brig, or, in other words, could have gotten her off in about the same length of time in which she was gotten off. The employment of the others was therefore unnecessary. But it is often difficult to determine what amount of force may be neces-

sary to relieve a vessel and cargo in the shortest time, and the employment of a supernumerary force is not censurable, but the vessel and cargo must not be charged with an increased salvage on account of such supernumerary force.

As to the third point, that the vessel was not in a dangerous situation, and that the master could have gotten her off at the same high water without assistance: The vessel was on a smooth but hard and rocky bottom, exposed on the windward side to the sea from the Gulf, and on the leeward side to the shoaler water, and more danger-ous rocks. Now, if the weather had re-mained good, if the brig had stood upright on her keel, and not careened over on her bilge, if the master could have carried out his stream anchor with a sufficient scope of chain or hawser to have hove her off by, if these and other contingencies had all hap-pened, then the brig would not have been in a dangerous situation. But these contin-gencies were at the time doubtful and un-tried events. The master of the brig deem-ed her in a dangerous situation, or he would not have taken the assistance offered him. In my opinion he judged rightly. · Sev-eral vessels have been lost on the same reef, and this vessel would have been in imminent peril upon a slight increase of the wind from the Gulf, unless she had been hauled off at the first high water. The master says he could have hauled the brig off at the same high water without assistance. This is possible, and indeed, since the event has proved the facility with which it was done, it is probable that the master could have carried out his stream anchor, and have haul-ed the brig off. But would he, in proper time, have carried out his anchor? Could he, without mishap or mistake, have carried it out with a sufficient scope of chain or cable to have hauled her off? Could he, without a pilot, have gotten her under way safely on a lee shore? All this is possible, and perhaps probable.

The true state of this case is this: This brig was ashore on a dangerous reef of rocks, and the master, in view of all the circumstances, and in the exercise of his best judgment, deemed it necessary to em-ploy the wreckers to get her off. They went to work, and in a short time got her off in the manner related in their libel. They are to be compensated according to their merits and the value of their services. Their chief merit consists in the promptness with which they came to the vessel's relief and carry-ing out her heavy anchor. The lightening the brig I pretty much lay out of the ques-tion, for this, although deemed necessary and prudent at the time proved, in my opin-ion, to be unnecessary. In Walter v. The Montgomery [Case No. 17,120], the court said: "A prominent feature in the merit of the salvors is the promptness with which their services were rendered. This is a

quality highly commended in this court, up-on grounds of policy. A single anchor op-portunely carried out, the assistance of a single wrecking vessel for half an hour, will often save a large amount of property from total loss. 'Bis dat qui cito dat.'" This re-mark is justly applicable to this case. The carrying out of this anchor before the tide rose to its height saved the brig from in-jury. Had it not been carried out, the brig and cargo might have been lost. The value of the brig and cargo are not exactly known, and their appraisement would be attended with considerable expense and delay. I sup-pose, however, that fourteen thousand dol-lars is not too high an estimate of their value. Under all these circumstances, and considering that these wrecking vessels are regularly employed in cruising and render-ing assistance to vessels situated as this brig was, that they are manned and sup-ported at a large annual expense, I do not think that two thousand dollars is too large a compensation to be given the wreckers for their services to this brig and cargo. It is therefore ordered, adjudged, and decreed that the libellants in this case are entitled to the sum of two thousand dollars for their services to the brig Ann Johnson and her cargo, rendered as set forth in their libel, and that upon payment thereof to the mar-shal, and the costs and expenses of this suit, he restore the said brig and cargo to the master thereof, for and on account of whom it may concern.